## STATE v. MILNE.

No. 6410. Decided April 7, 1942. (124 P. 2d 540.)

See 22 R. C. L., 1225; 52 C. J., Rape, sec. 118.

*Edward F. Richards,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *Brigham E. Roberts, H. D. Lowry, Herbert F. Smart,* and *A. J. Brennan,* all of Salt Lake City, for respondent.

MOFFAT, Chief Justice.

The defendant was convicted of the crime of attempted rape. At the close of the state's case, defendant moved the court to dismiss the charge upon the ground the state had failed to prove the necessary elements to make a case. A directed verdict was asked upon the behalf of the defendant upon the same ground. Both motions were denied. The jury brought in a verdict of guilty. The defendant appealed to this court.

Sylvia Barrett testified that on the evening of the 15th day of June, 1940, she attended a dance at Union where she

met prosecutrix. At intermission they came out of the dance and met the defendant and he asked if they wanted to go for a ride. They said they did not want to go for a ride but that they wanted to go to Sandy for the dance and he said he would take them there if they wanted to go. When they reached the Sandy dance they asked if he would wait for them and he said that he would. They came out of the dance about 12, got into the front seat with him and drove to Dyer's Inn, located at the mouth of the canyon, where they had an ice cream sundae. After they left the inn the defendant drove the Barrett girl directly home.

Harry Retalic testified that he went to the dance at Union on June 15, 1940; that he was acquainted with prosecutrix, Sylvia Barrett and Edward Milne, the defendant. He said he saw all of the parties at the dance; that Milne was seated in his car outside. That he, Retalic, also went to the dance at Sandy then went to the Windmill Inn at Midvale for a sandwich and then drove his girl up on 11th East to about 90 or 95th South, where he parked the car along the side of the road. He stayed there about five or ten minutes when another car passed him going south. This car stopped down the road off of the gravel portion of the highway in front of him. He started up his car when he saw two individuals running down the road off of the travelled portion of the road. He recognized the persons as prosecutrix and Milne. The girl was ahead. He passed them but did not stop. He put the spotlight on them. While the girl was running, he didn't know whether she was buttoning up her blouse or holding onto her neck. When he passed them he did not hear anything and he did not hear her call. He continued on and did not even look back.

Lote Kinney, special investigator for the District Attorney's office, County Attorney's office and Salt Lake Police Force, stated that he had had a conversation on July 6 with the defendant concerning his activities on June 15th and 16th. He was told the following: that Milne was a married man with two children. On the evening of June 15 he was

in his car alone and went to the open air dance pavilion in Union. Shortly before 11 o'clock he parked out in the road in front of the dance to listen to the music. While he was there, the prosecutrix and another girl that he did not know but who later he learned to be the Barrett girl, came over to the car and spoke to him. When they said they wanted to go to the dance at Sandy he offered to take them there. He had agreed to wait for the girls at the dance and take them home. Before going home they went to Dyer's Inn at Knudson's corner and had some ice cream. He got the Barrett girl home about 1 A. M. As he came out of the lane which was about 68th South to take the prosecutrix home he would have to turn west and instead he turned east and she said, "You are going to the canyon aren't you?" And he said "Oh, no." but that as he was making the turn she opened the side door of the front seat on the right hand side and jumped or fell to the ground. That the car was going about 15 miles an hour. She was dragged a short distance; that he got out and put her in the front seat again and she appeared to be stunned. He then drove up to 75th South and some East—and she asked for a drink of water and he got out and got some water out of the ditch along the side of the road. They remained up there until about 5 o'clock. The reason he did this was that he was hoping she would come to as she seemed stunned and very dazed. From this place he drove down near her home and let her out of the car a block or so from her home. She left the car on her own power and he could see through the rear view mirror that she was walking west. He saw her proceed some 50 feet and then drove off. That was the last that he had seen of her. The statement made about her falling out of the car was as follows:

"When she jumped, what happened?" "She fell, I guess she figured she could jump out and land on her feet but I was going too fast and she fell onto the ground. It looked like she held onto the handle and it drug her until she let loose. The road where she fell was an oiled surface road."

She fell right on the edge of the oil surface. He stated that when he gave her the drink at 75th South, she got out of the car and walked about a bit and that he went and got her and put her back in the car. He also told him that her clothes were torn when she fell out of the car. He also asked him if he had attempted to have sexual relations with his girl and he stated "No."

There is not a word of testimony that defendant in any way touched the girl except that when she got out of the car and walked about a bit that she was apparently in a dazed condition due to a fall from the car and that at that time he got her and put her back in the car. There is not one word of evidence that he made any advances toward her. The uncontradicted evidence is that her bruises on her back were due to the fall and that her clothes were torn by her not clearing the car and being dragged a little along the ground.

The motion to dismiss and the motion for a directed verdict for defendant should have been granted.

The cause is reversed and remanded to the trial court with instructions to dismiss the cause.

LARSON, J., concurs.

WOLFE, Justice (concurring).

My doubts about this case cause me to concur in the opinion.

The girl evidently in some fashion suffered a basal fracture of the skull which caused her to lose all memory of what happened to her while in the company of the accused. There was evidence that her clothes had been disarranged, and that her hymen had been "nicked," but this might have been caused by means other than rape. She was also bruised about the body and there were blood spots on her undergarments. There was also evidence that she had been carried and deposited on the spot near her home where she was found, thus contradicting defendant's testimony that

she got out of his car about a block from her home and started to walk home. If the girl in jumping from the car was dragged certainly the defendant would hardly have been chasing her as one witness said he saw happening when he threw his spot light upon them both. Unfortunately the girl who was the only person besides the defendant who could testify as to what happened, suffered an amnesia. While I can readily understand that a jury might conclude that when a girl had been out with a married man all night and was found unconscious in a position that implied care in setting her down, with evidence that her body and especially her sexual parts had suffered some injury, and there was evidence that her escort's professed solicitude was not to be taken at its face value, it might conclude that he had raped her. In order to do so, however, the jury would have had to conjecture rather than infer. The evidence that her hymen had not been broken but only "nicked" would rather favor the view that sexual intercourse had not taken place. While I do not think there is the utter lack of testimony "that defendant in any way touched the girl except that when she got out of the car  *  *  *  he got her and put her back in the car," the fact that the jury may have thought the defendant was lying, plus the other circumstances in this case, do not add up to attempted rape. There must be some evidence of an overt act which if carried to consummation would have been rape or which was intended to consummate rape. As in the case of *State* v. *Mortensen,* 95 Utah 541, 83 P. 2d 261, this is lacking. There was a basis for strong conjecture not quite reaching a sufficient basis for inference.

McDONOUGH, J., concurs in the result.

PRATT, J., concurs for the reasons given by Mr. Justice WOLFE.